Trifilio v Woodrow Plaza LLC #2 (2024 NY Slip Op 51420(U))

[*1]

Trifilio v Woodrow Plaza LLC #2

2024 NY Slip Op 51420(U)

Decided on October 15, 2024

Supreme Court, Richmond County

Castorina, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 15, 2024
Supreme Court, Richmond County

Michelle Trifilio, Plaintiff,

against
Woodrow Plaza LLC #2 et al, Defendant.

Index No. 150009/2023

Counsel for the Plaintiff:
GLEN DEVORA, ESQ.
JONATHAN D'AGOSTINO & ASSOCIATES, P.C. 
3309 Richmond Avenue
Staten Island, NY 10312 
Phone: (718) 967-1600 
E-mail: gdevora@daglawteam.com
Counsel for the Defendants:
CHRISTOPHER THOMAS CAFARO, ESQ. 
Hall Booth Smith, P.C
840 Franklin Ave 
P.O. Box 7677
Garden City, NY 11530 
Phone: (516) 747-4082
E-mail: ccafaro@hallboothsmith.com

Ronald Castorina, Jr., J.

The following e-filed documents listed on NYSCEF (Motion #002) numbered 5772 were read on this motion.
Upon the foregoing documents, and after oral argument conducted on September 24, 2024, on Motion Sequence No. 002, Motion Sequence No. 002 is resolved and therefore, it is hereby,
ORDERED, that Defendant's request for summary judgment pursuant to CPLR § 3212 [*2]dismissing Plaintiff's Complaint in all respects against Defendant is DENIED, and it is further;
ORDERED, that counsel shall appear for a conference on November 14, 2024, at 9:30 A.M. at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY, and it is further;
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
 Memorandum Decision

 I. Procedural History
On or about January 3, 2023, Plaintiff commenced this negligence action to recover for personal injuries allegedly sustained by Plaintiff, Michelle Trifilio, because of a fall that occurred at 1275 Woodrow Road, Staten Island, New York. Defendant filed Motion Sequence No. 002 by Notice of Motion on August 2, 2024, seeking (a) summary judgment pursuant to CPLR § 3212 dismissing Plaintiff's Complaint in all respects against Defendant; and (b) for such other and further relief that this Court may deem just and proper.
Plaintiff filed opposition on September 18, 2024. Defendant filed reply on September 23, 2024. Oral argument was completed on September 24, 2024.

 II. Facts
On February 8, 2020, at approximately 10:00 AM, Plaintiff, Michelle Trifilio, was involved in a slip and fall in the parking lot at the Woodrow Plaza Shopping Center. (NY St Cts Filing [NYSCEF] Doc No. 63 at pages 15-17). Plaintiff testified that on the day of the incident it was a very cold day and there had been no rain or snow the night before. (see id at page 21, lines 9-20). Plaintiff further testified that when she left her home at approximately 8:30 AM there was no snow or ice on the ground. (see id at page 18; 22).
Plaintiff testified regarding the incident as follows:
A. I was going towards the back of the car.
Q. What happened?
A. And I was  I took a few steps and went up in midair and came down pretty hard.
Q. At that point were you carrying anything?
A. No.
Q. Do you know around what time it was at that point?
A. It was around 10:00, 10 after 10:00.
Q. What were the lighting conditions like, the sun was up?
A. Yes.
Q. Did you have any difficulty being able to see as far as the lighting conditions?
A. No. (see id pages 30, lines 2-20).
Q. What is the material of the parking lot in that area?
A. Asphalt.
Q. What color?
A. Black I want to say, I am not a hundred percent sure but I would assume. Maybe light black.
Q. And at any point in time did you see what it was that caused you to fall?
A. Yes.
Q. What was it?
A. Ice.
Q. Can you describe the ice?
A. Describe the ice?
Q. Like how big was it?
A. After the fact, it was around my car and around the other cars as well, so on both sides. So it was circular, so it was  I guess kind of like I could describe it as standing or would be standing water and then I guess froze.
Q. At the moment of your incident was it standing water or was it ice that was frozen?
A. It was ice.
Q. Approximately how thick was it?
A. I couldn't tell you that.
Q. What color was it?
A. I couldn't tell you that either. I fell backwards, so I felt it on my back.
Q. When was the first time that you noticed that there was ice on the asphalt?
A. When I was on top of it.
Q. Was it before or after you fell?
A. After I fell. (see id pages 32-33).
Q.Okay. Prior to your fall, do you know the last time any snow removal was done in that parking lot?
A. I really don't pay attention to that sort of thing.
Q. Prior to your fall, do you know the last time when any salting was done in that parking lot?
A. I don't remember, I don't kind of go  I really don't pay attention to that as far as  you know, I have seen salt in there. (see id page 136, lines 2-12).
Leonello Savo, Jr., one of the four co-owners of the property where the alleged incident occurred, which is a commercial shopping center located at 1273 and 1275 Woodrow Road (NY St Cts Filing [NYSCEF] Doc No. 64 at page 18, lines 13-16). Mr. Savo testified that the shopping center contracts with Pool Doctor for snow removal services (see id at page 19, lines 14-18) and he contracted for those services. (see id at pages 19-20). Mr. Savo testified regarding the snow removal services as follows:
Q. What was your understanding of when Pool Doctor was to perform their services at the shopping center?
A. Yes, generally anything over two inches of accumulation for snow.
Q. Was there a two inch trigger at which Pool Doctor was to report if there was two inches or more of snow?
A. No.
Q. What did you mean by generally over two inches of snow?
A. I guess snow would be forecasted so there would be no way to know the actual accumulation after a storm until after it's completed so yes, he would, you know  that is basically what I meant by that.
Q. Looking at the third page of the document it says one option must be chosen for the following circumstances of weather conditions, do you see that?
A. Yes.
Q. It looks like there is a checkmark under option B customer request only, correct?
A. Yes.
Q. This weather condition indicates snow fall less than the amount of start inches in your contract, may or may not be enough to plow or shovel but conditions may be slippery, icy and hazardous, may need shoveling, plowing and or salt application. Do you see that [*3]section with the three bullet points?
A. Yes.
Q. What was your understanding of option B when it was checked off?
A. Yes, we would be contacted if there was any kind of snow that, you know, may fall under the two inches but may still want services. (see id at pages 34-36).
Q. The tenants of the shopping center, if they have complaints about the snow removal or the need for snow removal, who would they contact?
A. They may reach out to me individually or contact the management company.
Q. Are the tenants permitted to contact Pool Doctor directly?
A. No. (see id at pages 37-38).
Q. Back in February of 2020, who, if, anyone on behalf of the shopping center monitored the weather?
A. I guess it would be me. (see id at page 41, lines 22-25).
Q. What conditions, if at all, would you contact Pool Doctor for services after reviewing the weather channel?
A. If it was forecasted for any cold temperatures or freezing temperatures.
Q. What services would you request for cold and freezing temperatures?
A. For salting.
Q. In regard to the parking lot at the shopping center, was Pool Doctor contracted to remove snow and do salting for just the driving lanes or the parking lanes or a combination of the two or something else?
A. Yes, it would be for the entire parking lot and walkways. (see id at pages 42-43).
Mr. Savo further testified regarding prior snow or ice issues and the complaint and inspection process.
Q. Have either of the LLC's ever received complaints concerning snow or ice accumulation in the parking lot?
A. Not that I am aware of. (see id at Page 47, lines 20-23).
Q. What about customers of the shopping center, what protocol would they have to follow to put in a complaint?
A. There is no protocol. (see id at page 48, lines 7-10).
Q. Back in February of 2020, how often did somebody inspect the premises on behalf of either LLC?
A. I think I mentioned it earlier, it would be like every couple of days.
Q. Would that be you doing the inspection?
A. Yes.
Q. What would you do during your inspection?
A. Just drive by the parking lot and just check on conditions.
Q. Would you keep any records of those inspections?
A. No. (see id at page 60, lines 5-19).
Q. Have you or anybody on behalf of any of the LLC's ever complained to Pool Doctor about the condition of the shopping center after their services have been completed?
A. Yes.
Q. Do you know when you have done that?
A. Not exactly when but at times.
Q. How would you make that complaint?
A. Either by text or phone call.
Q. Do you recall what your complaint was on any of those instances?
A. It would be if, you know, if the snow removal wasn't done entirely or if things still needed to be completed. (see id at pages 63-64).
Q. Were you aware that on February 8, 2020 at some point Pool Doctors performed spot salting work?
A. Not that I recall. I wasn't aware.
Q. Do you know if anyone from Woodrow would have requested that spot salting be done on that day?
A. Generally it would be myself that would communicate with Bobby or Richie.
Q. You said you don't have a recollection of speaking to them on that day, correct?
A. Correct. (see id at pages 82-83).

 III. Summary Judgment
"Summary judgment is designed to expedite all civil cases by eliminating from the Trial Calendar claims which can properly be resolved as a matter of law. Since it deprives the litigant of his day in court it is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues" (see Andre v. Pomeroy, 35 NY2d 361 [1974] citing Millerton Agway Cooperative, Inc. v. Briarcliff Farms, Inc., 17 NY2d 57 [1966]).
"[T]he elements of a cause of action sounding in negligence are: (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of this duty; and (3) an injury to the plaintiff as a result thereof" (see Poon v Nisanov, 162 AD3d 804 [2d Dept 2018] quoting Stukas v Streiter, 83 AD3d 18 [2d Dept 2011]).
"Accordingly, a defendant who moves for summary judgment dismissing a cause of action alleging negligence may sustain his or her initial burden by 'establishing, prima facie, that he or she was not at fault in the happening of the subject accident'" (see id quoting Boulos v. Lerner-Harrington, 124 AD3d 709 [2d Dept 2015] citing Goldstein v Kingston, 153 AD3d 1235 [2d Dept 2017]; Searless v Karczewski, 153 AD3d 957 [2d Dept 2017]; Victor v Daley, 150 AD3d 1307 [2d Dept 2017]; Faust v Gerde, 150 AD3d 1204; Faust v Gerde, 150 AD3d 1204 [2d Dept 2017]).
"In order to impose liability upon a defendant in a slip and fall case, there must be evidence tending to show the existence of a dangerous or defective condition, and that the defendant either created the condition or had actual or constructive knowledge of it" (see Sadowsky v 2175 Wantagh Ave. Corp., 281 AD2d 407 [2d Dept 2001] citing Gordon v American Museum of Natural History, 67 NY2d 836 [1986]; King v New York City Transit Auth., 266 AD2d 354 [2d Dept 1999]; Patrick v Cho's Fruit & Vegetables, 671 NYS.2d 274 [2d Dept 1998]).
"A property owner will be held liable for a slip-and-fall accident involving snow and ice on its property only when it created the dangerous condition which caused the accident or had actual or constructive notice of its existence" (see Coelho v S&A Neocronon, Inc., 178 AD3d 662 [2d Dept 2019] citing Bombino-Munroe v Church of St. Bernard, 163 AD3d 616 [2d Dept 2018]; Castillo v Silvercrest, 134 AD3d 977 [2d Dept 2015]; Cuillo v Fairfield Prop. Servs., L.P., 112 AD3d 777 [2d Dept 2013]).
A "defendant who moves for summary judgment in a slip-and-fall case has the initial burden of making a prima facie showing that it neither created the hazardous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and [*4]remedy it" (see id quoting Castillo v Silvercrest, 134 AD3d 977 [2d Dept 2015]).
"To meet its initial burden on the issue of lack of constructive notice, [a] defendant must offer some evidence as to when the area in question was last cleaned or inspected relative to the time when the plaintiff fell" (see id quoting Ahmetaj v Mountainview Condominium, 171 AD3d 683 [2d Dept 2019]; citing Feola v City of New York, 102 AD3d 827 [2d Dept 2013]).
Plaintiff contends in her deposition that ice had caused her to fall and the ice "was around my car and around the other cars as well, so on both sides. So it was circular, so it was  I guess kind of like I could describe it as standing or would be standing water and then I guess froze." (NY St Cts Filing [NYSCEF] Doc No. 63 at page 32, lines 20-25). This is distinct from the matter of Gam v Pomona Prof'l Condo., 291 AD2d 372 [2d Dept 2002], in which the "injured plaintiff testified that she did not see the patch of ice on the sidewalk, or any icicles hanging from the roof, prior to the fall" and "[b]ased on this evidence, any finding concerning when the ice patch developed or that it may have formed as the result of icicles on the roof could be based only on speculation."
Plaintiff testified that on the day of the incident it was a very cold day and there had been no rain or snow the night before. (NY St Cts Filing [NYSCEF] Doc No. 63 at page 21, lines 9-20). Plaintiff further testified that when she left her home at approximately 8:30 AM there was no snow or ice on the ground. (see id at page 18; 22). Plaintiff testified that before she left home, she did not need to clear any snow off her car and did not recall if she needed to user her defroster. (see id at pages 22-23). Plaintiff did not see any snow or ice on the roadway and did not have any difficulty driving. (see id at page 23-24).
Plaintiff testified that she did not know what the temperature was, but that it was very cold that morning. (see id at page 26, lines 4-8). Neither party has submitted any admissible meteorological evidence pertaining to precipitation or temperature at the time of or prior to Plaintiff's alleged slip and fall on ice in the Defendant's parking lot.
Leonello Savo, Jr., one of the four co-owners of the property testified that Defendant had a contract with Pool Doctor for snow and ice removal services. (NY St Cts Filing [NYSCEF] Doc No. 64 at page 31, lines 19-25). The contract provided that if there was less than two inches of snow, Pool Doctor would contact Mr. Savo to inquire if snow removal services were required. (see id Page 36, lines 5-17).
Mr. Savo further testified that in February of 2020, he would inspect the premises every couple of days which consisted of driving "by the parking lot and just check on conditions" and that no records were kept of the inspections. (see id at page 60, lines 5-19).
"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (see Johnson v 101-105 S. Eighth St. Apts. Hous. Dev. Fund Corp., 185 AD3d 671 [2d Dept 2020] quoting Gordon v American Museum of Natural History, 67 NY2d 836 [1986]). "To meet its burden on the issue of lack of constructive notice, a defendant must offer some evidence as to when the accident site was last cleaned or inspected prior to the accident" (see id citing Butts v SJF, LLC, 171 AD3d 688 [2d Dept 2019]; Birnbaum v New York Racing Assn., Inc., 57 AD3d 598 [2d Dept 2008]).
"Mere reference to general cleaning practices, with no evidence regarding any specific cleaning or inspection of the area in question, is insufficient to establish a lack of constructive notice" (see id quoting Herman v Lifeplex, LLC, 106 AD3d 1050 [2d Dept 2013]; citing Griffin v PMV Realty, LLC, 181 AD3d 912 [2d Dept 2020]).
Here, Defendant's testimony of general inspection practices, specifically driving by the parking lot every couple of days, has provided no evidence regarding any particularized or specific inspection procedure in the area of the Plaintiff's fall on the date of the occurrence (see Mercedes v City of New York, 107 AD3d 767 [2d Dept 2013] citing Birnbaum v New York Racing Assn., Inc., 57 AD3d 598 [2d Dept 2008]), is "insufficient to satisfy the defendant's initial burden on the issue of lack of constructive notice" (see id quoting Klerman v Fine Fare Supermarket, 96 AD3d 907 [2d Dept 2012]; citing Santos v 786 Flatbush Food Corp., 89 AD3d 828 [2d Dept 2011]; Schiano v Mijul, Inc., 79 AD3d 726 [2d Dept 2010]).
"Only after a defendant has satisfied this threshold burden, will the sufficiency of the plaintiff's opposition be examined" (see id citing Winegrad v NY Univ. Med. Ctr., 64 NY2d 851 [1985]; Joachim v 1824 Church Ave., Inc., 12 AD3d 409 [2d Dept 2004]).
Accordingly, Defendant's request for summary judgment pursuant to CPLR § 3212 dismissing Plaintiff's Complaint in all respects against Defendant is DENIED.

IV. Decretal Paragraphs
It is hereby ORDERED, that Defendant's request for summary judgment pursuant to CPLR § 3212 dismissing Plaintiff's Complaint in all respects against Defendant is DENIED, and it is further;
ORDERED, that counsel shall appear for a conference on November 14, 2024, at 9:30 A.M. at the Courthouse located at 26 Central Avenue, Courtroom 330, Staten Island, NY, and it is further;
ORDERED, that the Clerk of the Court shall enter judgment accordingly.
The foregoing shall constitute the Decision and Order of the Court.
Dated: October 15, 2024
Staten Island, New York
E N T E R ,
HON. RONALD CASTORINA, JR.
JUSTICE OF THE SUPREME COURT